## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**HENRY BROWN,**

     **Plaintiff,**

**vs.**                                   **CASE NO. 1:05CV136-MP/AK**

**MICHAEL J. ASTRUE,**[1]

**Commissioner of**
**Social Security**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act

(Act) for review of a final determination of the Commissioner of Social Security

(Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB)

under Title II of the Act and supplemental security income benefits (SSI) filed under Title

XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and

determinations of the Commissioner are supported by substantial evidence; thus, the

decision of the Commissioner should be affirmed.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

A.      **PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on April 12, 1999, and March 24, 1999,

respectively, alleging a disability onset date of March 13, 1999, because of a heart

attack, shortness of breath, and fatigue.  Plaintiff petitioned for a hearing before an

administrative law judge (ALJ), who conducted a hearing on February 13, 2001, and

entered an unfavorable decision on May 22, 2001.  The Appeals Council denied

Plaintiff's request for review, and Plaintiff filed a complaint in the United States District

Court for the Northern District of Florida on December 10, 2002, and the case was

remanded for a new hearing on June 10, 2004.  A new hearing was held on February 2,

2005, and an unfavorable decision was entered on May 6, 2005. This action followed.

B.      **FINDINGS OF THE ALJ (Decision dated 5/6/05) (R. 372-381).**

The ALJ found that the Plaintiff had diabetes mellitus, high blood pressure, and a

history of chest pain status-post angioplasty and stent placement, which are severe

impairments, but which do not meet or equal any of the Listings of Impairments.  (R.

377).  The ALJ found that Plaintiff's allegations of disability are not supported by the

objective evidence and are inconsistent with his reported daily activities, which include

reading, fishing, as well as mowing the lawn over a two day period.  (R. 377).  Based on

Plaintiff's description of his past jobs, he retains the capacity to perform his past

relevant work as a house parent at a fraternity house, as well as numerous other jobs at

the sedentary level which exist in the national economy such as general clerk, records

clerk, and an information clerk.

**No. 1:05CV136-MP/AK**

Despite his allegations of chronic fatigue and difficulties with memory and concentration, the ALJ found that he was not treated for these complaints and they were exaggerated and inconsistent with his reported daily activities.  (R. 378).  The ALJ also found that Plaintiff failed to follow prescribed treatment.  (R. 378).  Therefore, finding Plaintiff capable of a full range of sedentary work, with the additional restrictions of being able to only occasionally climb stairs, never climb ladders, ropes or scaffolds, and to avoid extreme cold, Plaintiff is not disabled under Rule 201.07 of the Medical-Vocational Guidelines.  (R. 381).

## C.     ISSUES PRESENTED

Plaintiff argues that the ALJ erred in finding that Plaintiff's testimony regarding pain was not credible under the Eleventh Circuit pain standard and whether the ALJ committed error in not concluding Plaintiff was disabled after the vocational expert testified in response to Plaintiff's counsel's hypothetical that there was no work that Plaintiff could perform.

The government responds that the ALJ properly considered all of the factors set forth in the Holt decision by the Eleventh Circuit, which established the framework for assessing pain and credibility.  The ALJ discussed the objective medical evidence acknowledging that Plaintiff had two stent placements, but the diagnostic studies conducted do not support the degree of pain and limitation Plaintiff describes.  Plaintiff was taking no medication for his diabetes, which was under excellent control, as was his high blood pressure.  In November 2002, after his second stent placement he reported

**No. 1:05CV136-MP/AK**

no chest pain and took no nitroglycerin.  None of his treating physicians had told him not to return to work and there are several RFC's in the record which support light duty. The record also supports that Plaintiff has not complied with recommendations to diet and lose weight, has not taken medication as prescribed, even though the non-compliance issue is not the sole basis of the ALJ's credibility finding.

The ALJ is not required to include in an hypothetical allegations made by the Plaintiff that he does not find credible such as the need to lie down several hours during the day.  None of Plaintiff's physicians told him this degree of rest was necessary, in fact Dr. Vesely told him several times to increase his activity levels.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

D.    **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It

**No. 1:05CV136-MP/AK**

is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703

F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the

evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86

F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence

supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624

(11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to

the Commissioner's findings, where there is substantially supportive evidence of the

Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d

227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the

Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v.

Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's

failure to apply correct legal standards or to provide the reviewing court with an

adequate basis for it to determine whether proper legal principles have been observed

requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To

qualify as a disability the physical or mental impairment must be so severe that claimant

is not only unable to do his previous work, "but cannot, considering his age, education,

**No. 1:05CV136-MP/AK**

and work experience, engage in any other kind of substantial gainful work which exists

in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in

five steps:

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairment?

3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.    Does the individual have any impairments which prevent past relevant work?

5.    Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation

unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps

him from performing his past work.  If Plaintiff establishes that his impairment keeps him

from his past work, the burden shifts to the Commissioner at step five to show the

existence of other jobs in the national economy which, given Plaintiff's impairments,

Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986);

MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner

carries this burden, Plaintiff must prove that he cannot perform the work suggested by

the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within

the district court's discretion to affirm, modify, or reverse a Commissioner's final

**No. 1:05CV136-MP/AK**

decision with or without remand. 42 U.S.C. § 405(g); <u>Myers v. Sullivan</u>, 916 F.2d 659, 676 (11th Cir. 1990).

**E.      SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff was admitted to Shands Hospital on March 13, 1999, with chest pains. (R.138-168).  He underwent a cardiac catheterization, which revealed coronary artery blockage and disease, for which he had angioplasty and stent placement.  (R. 140).  He was released to office duty two days after his discharge.  (R. 142).

In an RFC dated August 9, 1999, five months after his surgery, a state agency physician found Plaintiff capable of light work.  (R. 182-189)

In an examination on September 24, 1999, his x-ray showed only mild cardiomegaly, his blood pressure was good, and he had a normal heart rhythm despite his contention that he remained unable to work.  (R. 274-276).

In December 1999, Plaintiff's treating physician noted that three EKG's confirmed normal ejection function, regular heart rate, no edema.  (R. 201-202).

Another RFC dated January 18, 2000, also found him capable of light work, with some restrictions on climbing and exposure to extreme cold.  (R. 190-197).

On April 4, 2000, Plaintiff was noted to have stable coronary artery disease, improved blood pressure, and excellent diabetes control.  (R. 259).

An EKG on July 17, 2000, showed no ischemic changes.  (R. 243).

A medical assessment dated September 8, 2000, by Dr. Ganesh at the Veterans Administration, found him capable of lifting over 40 pounds, 21.5 pounds frequently,

**No. 1:05CV136-MP/AK**

able to walk 8 minutes before his blood pressure rose, no sitting restrictions, and occasionally able to climb.  (R. 227-228).

Following episodes of chest pain, Plaintiff underwent a myocardial perfusion test on January 4, 2001, which showed ischemia in the proximal anterior and anterolateral wall and a small fixed defect in the periapical lateral wall.  (R. 339).  His medication was increased.  (R. 306).

On April 9, 2001, Plaintiff underwent another stent placement and was discharged with instructions to do no strenuous activity for one week.  (R. 350-351).

Plaintiff's medical history developed after the case was remanded shows that following the second stent placement an EKG conducted on November 14, 2002 showed "no acute change" and he was "chest pain free without any intervention [use of nitroglycerin]."  (R. 558).  He was advised several times by his treating physician, Dr. Vesely, to increase his physical activity.  (R. 479, 513, 582).

An EKG dated December 4, 2003, showed "borderline concentric left ventricular hypertrophy, normal wall motion, normal left and right ventricular functions, mildly dilated left atrium, mild calcification, trace mitral regurgitation, and trace tricuspid regurgitation.  (R. 460-461).

The VA increased Plaintiff's disability rating from 30% to 60% based on his heart condition on January 6, 2004.  (R. 429).  This report was based on an adrenaline stress thallium study conducted on 7/3/02 and an EKG of 12/4/03.  (R. 430).

**No. 1:05CV136-MP/AK**

**F.      SUMMARY OF THE ADMINISTRATIVE HEARING held on February 2, 2005)**

Plaintiff appeared with counsel (doc. 594), and he went over his past relevant

work with the ALJ clarifying several jobs and the duties performed.  (R. 598-605).

Plaintiff could not recall dates of some of his jobs and he was given 15 days to provide

the information (R. 605).  His last job was at Florida Pest Control as a custodial worker,

when he had his heart attack.  (R. 605).  He never returned to work because he gets

tired after walking a quarter of a mile, and he has trouble breathing, and issues with the

diabetes and high blood pressure.  (R. 606).  He also gets tired after walking up two or

three flights of stairs.  (R. 606).  Once he's gotten tired he relaxes for about 20 to 30

minutes at a time, sometimes two or three times a day.  (R. 607).  His average day

consists of:

> I usually get up and have breakfast.  And I walk to the mailbox to get the
> paper.  I read a lot.  I read books and stuff.  I don't watch t.v. that much.
> And sometime I might go visit my relatives and friends.  I'll leave and go to
> Gainesville, from where I live which is about 15 miles.  Sometime in the
> summer I try to cut my yard but most of the time I have my neighbor to do
> that because I can't--I've got a push lawnmower.  And sometime it'll take
> me a couple days because I might cut 10 or 15 minutes and then I'll stop
> and I'll cut part more the next day or something like that.  I trim my hedges
> around the house.

He states that he can lift about 20 pounds, stand a half hour to about an hour, but

he has chest pain upon walking, running or lifting.  (R. 609).  He also describes his days

as "I vacuum.  I wash my dishes.  I cook my meals...Wash my windows."  (R. 611).  He

**No. 1:05CV136-MP/AK**

also includes a three hour nap each day.  (R. 612).  He reads a lot, but has trouble

remembering what he read unless someone mentions it, then it comes back.  (R. 612).

His doctor has told him to walk fast, walk more, do more exercise and eat right.  (R.

613).  He has a college degree, a bachelors degree in criminal justice.  (R. 615).  When

asked what makes him disabled since 1999, he responds:

> My diabetes, my heart.  Sometimes I have high, well, my blood pressure
> goes way up, I feel dizzy.  I can't concentrate long enough on doing my
> regular work that I use to do.  I had--I couldn't write for a long time.  I had
> an operation on my hand so I can use it now, but I had to have a disc
> taken out.

He was able to use his hand five months after the surgery.  (R. 615).  He has several

hobbies, reading and fishing, and he attends a lot of meetings, he's a Mason and

Chairman of the Board of Trustees of the State of Florida.  (R. 617).

> The vocational expert testified to the following hypothetical posed by the ALJ:

> I want you to assume I have an individual who is 58 and 59.  And he has
> the past relevant work as described for the claimant...as well as his
> education.  I want you to assume, based on Exhibit 5F, that the individual
> could lift 20 pounds occasionally, 10 pounds frequently.  Sit, stand, or walk
> for six hours in an eight hour day.  Can occasionally climb stairs but
> should never climb ladders, ropes, or scaffolds.  And is to avoid extreme
> cold.

The expert testified that this was light work and did not preclude Plaintiff's past work as

a fraternity house counselor, or other jobs such as a hotel security officer, and because

of his education (bachelors degree in criminal justice) there were numerous clerical jobs

he could perform, including a records clerk, information clerk, and general clerk, which

are sedentary jobs.  (R. 619-625).

**No. 1:05CV136-MP/AK**

The attorney offered this hypothetical:

> ...if we were to add that a person due to fatigue from heart problems would actually have to in addition to his morning and afternoon break, would actually have...10-15 minutes, okay.  The a.m. and p.m. breaks.  In addition to those breaks if a person, due to fatigue from heart problems, they would have to lie down up to three hours a day and the person suffered from marked memory problems in remembering things would that person be able to perform the jobs you've listed?  (R. 625-626).

The vocational expert responded that no employer would allow for laying down three hours out of the work day.  (R. 626).  No employer would allow two or three additional twenty to thirty minute breaks during the day, even if Plaintiff did not have to lie down during the breaks.  (R. 626).

## G.   DISCUSSION

### a)   Pain Standard

Pain and other subjective symptoms are treated by the regulations as symptoms of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  Accord 20 C.F.R. § 416.929.  The Eleventh Circuit adheres to a three part pain standard:

> There must be evidence of an underlying medical condition and (1) there must be evidence of an underlying medical condition and either (2) objective medical evidence to confirm the severity of the alleged pain arising from the condition or (3) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

**No. 1:05CV136-MP/AK**

Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  The Eleventh Circuit continues to

follow this standard first established in Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir.

1985).  See Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  "While both the

regulations and the Hand standard require objective medical evidence of a condition

that could reasonably be expected to cause the pain alleged, neither requires objective

proof of the pain itself."  Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th

Cir. 1991).  The court has held that "[p]ain alone can be disabling, even when its

existence is unsupported by objective evidence."  Marbury v. Sullivan, 957 F.2d 837,

839 (11th Cir. 1992), citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

Standing alone, however, a claimant's testimony of pain is not conclusive evidence of

disability.  Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987).  If the Commissioner

rejects a claimant's allegations of pain, he must articulate explicit and adequate

reasons, and these reasons must be based on substantial evidence.  Hale v. Bowen,

831 F.2d 1007, 1012 (11th Cir. 1987).  The failure to articulate adequate reasons for

discrediting pain testimony mandates that the testimony be accepted as true as a matter

of law.  Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff claims that the diagnosis of a heart attack is sufficient to support the

elements of the Holt/Hand standard and that there is not substantial evidence to support

the ALJ's finding that Plaintiff's allegation of extreme fatigue is not credible. Plaintiff

asserts that the medical evidence is replete with references to his chronic problems with

fatigue, and the ALJ erred in relying upon his alleged non-compliance with medication

**No. 1:05CV136-MP/AK**

and treatment regimens and his reported daily activities to find his allegations not credible.

While the undersigned agrees that the record is not entirely clear on Plaintiff's alleged non-compliance, his treatment history does support that he quit using nitroglycerine because he did not feel like he needed it, which indicates an improvement in his chest pain symptomology.  Also, the ALJ did not rely entirely on that basis for finding Plaintiff's alleged functional limitations to be not entirely credible.  The primary basis, as the undersigned reads the decision, was the inconsistency between Plaintiff's allegations and the record as a whole, including the fact that even Plaintiff conceded that no physician had told him he could not work permanently nor had any treating source limited him from activity.  Plaintiff's primary reasons for not being able to work, fatigue and memory problems, are not documented in the treatment notes.  While he complains of fatigue, he did not complain to any of his treating sources that he could not function three hours out of every day from this fatigue nor did any physician suggest that he should lay down or rest for three hours, in fact, he was told on numerous occasions to increase his activity.  This is inconsistent with his allegations and constitutes a proper basis for discrediting his allegations.  As for his memory problems, there are no records to support treatment for this complaint, and his daily activities, reading and attending meetings, as well as working as a Chairman for the Board of Trustees (presumably for the Masons Association), do not support such difficulties.  The ALJ may properly consider a Plaintiff's reported daily activities in evaluating the

**No. 1:05CV136-MP/AK**

subjective complaints of pain and limitation.  See Macia v. Bowen, 829 F.2d 1009, 1012

(11th Cir. 1987).  Finally, there are three functional assessments in the record to support

the exertional limitations included in the hypothetical posed to the vocational expert,

which found Plaintiff capable of light work duty.  There is no merit to this claim.

        b)      Hypothetical to the vocational expert

        At the fifth step of the evaluation process, the ALJ must determine whether a

Claimant, based on his residual functional capacity, age, education and work

experience, can adjust to other work in the national economy.  20 C.F.R. §

404.1520(a)(4).  The ALJ may make this determination by reliance upon the Medical

Vocational Guidelines or by utilizing the services of a vocational expert.  Phillips v.

Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).  When the ALJ uses a vocational expert,

he elicits responses from the expert by posing hypothetical questions to him or her.  Id.,

at 1240.  In order for the expert's testimony to constitute substantial evidence to support

the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which

includes all of Claimant's impairments.  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir.

1999).   The ALJ is only required to pose those limitations he finds severe in the

hypothetical to the expert.  Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).

The ALJ is not required to include in his hypothetical any medical conditions which are

controlled by medication.  McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987).

        In this case, the ALJ posed those limitations that he found severe and supported

by the record.  He did not include Plaintiff's allegations of fatigue and the attendant

**No. 1:05CV136-MP/AK**

requirement that he lay down three hours a day or that he needed to rest an additional twenty or thirty minutes in the morning and afternoon because the record did not support such a finding.  Thus, substantial evidence supports the ALJ's decision.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this __*8*<sup>th</sup>__ day of November, 2007.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:05CV136-MP/AK**